# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) |
| | ) 2:16-cr-00013-JDL |
| **DAYMARY LISLE,** | ) |
| | ) |
| **Defendant** | ) |

## ORDER FOLLOWING REMAND

Daymary Lisle, a native of Curaçao, a Dutch island in the Caribbean, is a naturalized United States citizen. Lisle pleaded guilty to one count of unlawfully procuring naturalization (18 U.S.C.A. § 1425 (West 2019)) and one count of false statement (18 U.S.C.A. § 1001 (West 2019)). On September 20, 2018, she was sentenced to two years of probation based on her guilty plea. *See* ECF No. 56. Later that day, the Government filed a motion to revoke Lisle's citizenship under 8 U.S.C.A. § 1451(e) (West 2019) (the "Motion to Revoke"). *See* ECF No. 61. Section 1451(e) provides for the mandatory revocation of a person's naturalization upon being convicted of violating § 1425. Neither the Government nor Lisle knew at the time Lisle was sentenced that her conviction would result in the automatic and mandatory revocation of her citizenship. The resulting question presented is whether Lisle, who was not informed of this consequence at the time she pleaded guilty, entered a knowing and intelligent guilty plea.

## I. BACKGROUND

Lisle made her Initial Appearance and entered a plea of not guilty to the charges in this case on October 26, 2017. The only information concerning

immigration consequences mentioned during her Initial Appearance was the advice, given by the Court, in accordance with Fed R. Crim. P. 5(d)(1)(F), that if Lisle was not a United States citizen she had the right to consular notification regarding her arrest and charges.

On April 10, 2018, Lisle appeared before the court and pleaded guilty to two of the three charges in the indictment. Her plea was in keeping with a written plea agreement filed with the Court. *See* ECF No. 33. The agreement contained Lisle's waiver of the right to appeal her guilty plea and any other aspect of her conviction, as well as from her sentence, if she received a sentence that did not involve imprisonment. The agreement also contained a statement of the immigration consequences of Lisle's guilty plea in Paragraph 7:

> <u>Immigration Status.</u> *(Use in cases in which removal is a potential consequence of the guilty plea.)* Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. The parties agree and understand that the offense(s) to which Defendant is pleading guilty may result in Defendant being removed from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

ECF No.33 ¶ 7.

During the Rule 11 colloquy in court, Lisle was informed, pursuant to Fed. R. Crim. P. 11(b)(1)(O), of the citizenship-related consequences the conviction might have:

> THE COURT: Ms. Lisle, I am required to advise you that if you are not a United States citizen, by pleading guilty to these crimes you may be

removed from the United States, denied citizenship, and denied admission to the United States in the future; do you understand?

LISLE: Yes, Your Honor.

ECF No. 72 at 9. The colloquy subsequently addressed the immigration consequences of Lisle's conviction as described in Paragraph 7 of the plea agreement:

THE COURT: The agreement also reflects, in paragraph seven, that there might be immigration consequences from your guilty plea, and it could result in your removal from the United States. Also it reflects that removal and other immigration consequences are the subject of a separate proceeding, and that you have acknowledged in this agreement that no one, including your attorney, and including the Court, can predict – predict to any certainty the effect that your conviction will have on your immigration status; do you understand?

LISLE: Yes, Your Honor.

THE COURT: It also says that you nevertheless affirm that you want to plead guilty regardless of any immigration consequences that your plea may entail even if the consequences are your automatic removal from the United States. Do you understand that as well?

LISLE: Yes, Your Honor.

THE COURT: And that is your agreement?

LISLE: Yes, Your Honor.

*Id.* at 26.

As previously noted, Lisle's sentencing was held on September 20, 2018.[1] The Court engaged in the following colloquy with Lisle regarding her possible deportation:

---

[1] Two weeks before the sentencing hearing, on September 4, 2018, the parties' counsel met with the Court for the presentence conference. Lisle was not present. Lisle's counsel offered the following response to the Court's inquiry about Lisle's immigration status:

THE COURT: What is Ms. Lisle's immigration status or I guess deportation status?

[LISLE'S COUNSEL]: Well, she is a citizen.

THE COURT: Right.

3

> THE COURT: Ms. Lisle, as I understand it is your intention to now move to Curacao; is that correct?
>
> [LISLE]: In the future. I mean I brought my kids here to come back we have to – to finish their education, especially the older one that is a senior, and she was raised [here] – most of her life from – from Europe to here, two months she is raised here, and it is a better future for her, and to keep going and grow to be the woman she wants to be, yeah. And – I mean I do have a mother back in the island that's not doing so well, I mean I would love to be able to go. I mean I already have two deaths prior to this month, a couple months, that I wasn't able to attend to their funerals because I can't travel; but in the future, yes, I will love to be able to go back home and visit my family, yeah.
>
> THE COURT: Do you understand that you face the possibility of being deported as a result of this conviction?
>
> LISLE: I understand that, sir, yeah. Yeah. I mean I will take my – like I say, I accept responsibility and I take my punishment; but I wouldn't want them to affect my children.
>
> THE COURT: All right. I just want to be clear that, as indicated in the revised presentence investigation report, this conviction could and perhaps likely will lead to deportation; do you understand?
>
> LISLE: Yes, Your Honor.

ECF No. 74 at 10-11. Just before the close of the hearing, the Court again addressed Lisle's immigration status: "I am not at all confident as to what lies ahead for you in terms of the possibility of deportation and having to establish a new life in Curacao.

---

> [LISLE'S COUNSEL]: And that's a complicated question because I find case law is kind of [all] over the board on – on this issue. Some cases have found that the naturalization process poses no impediment to a removal proceeding based on fraud in acquiring the citizenship. Others have indicated that you would revert to your prior status after a denaturalization process which would send her back to being able – permanent lawful resident with a green card which would then make her vulnerable to deportation. But she is vulnerable to deportation in every instance, so it is highly likely that the end result, if even – even if it is after an extended process, would be the loss of citizenship and deportation to Curacao.

ECF No. 73 at 3.

I recognize, and I see that you do as well, that that's a strong possibility here." *Id.* at 17.

Later in the day on September 20th, after the sentencing hearing was completed and the judgment had been entered on the docket, *see* ECF No. 59, the Government filed its Motion to Revoke Lisle's citizenship under § 1451(e). ECF No. 61. Section 1451(e) reads:

> When a person shall be convicted under section 1425 of Title 18 of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled. Jurisdiction is conferred on the courts having jurisdiction of the trial of such offense to make such adjudication.

8 U.S.C.A. § 1451(e). It is undisputed that the Assistant U.S. Attorney who prosecuted the case, Lisle's defense attorney, and Lisle herself were not aware of the statute's requirement until after the sentencing hearing had adjourned, *see* ECF No. 81 at 10; ECF No. 82 at 3 n.2. The Government's Motion to Revoke has not been acted upon and remains outstanding.

Lisle filed a timely notice of appeal from her conviction and judgment. *See* ECF No. 64. Thereafter, the Government and Lisle agreed that the Motion to Revoke raised a "substantial issue" that could affect the appeal and that the case should be remanded for further proceedings in the District Court. *See* ECF No. 82-1; Fed. R. App. P. 12.1.[2] Specifically, the parties framed the substantial issue as "whether, in

---

[2] Appellate Rule 12.1 provides:

> **(a) Notice to the Court of Appeals.** If a timely motion is made in the district court for relief that it lacks authority to grant because of an appeal that has been docketed and is pending, the

light of the Government's motion having been filed as a consequence of her § 1425 conviction, [Lisle] made knowing and intelligent waivers in the plea agreement and at the entry of her plea of guilty."[3] ECF No. 82-1 at 3 (internal quotation marks omitted). The First Circuit granted the Government's Motion and remanded the case for this court to address the issue. *See* ECF No. 80.

On May 17, 2019, the Court convened a conference of counsel to discuss whether Lisle wished to introduce additional evidence as to whether she would still have pleaded guilty had she known that her citizenship would be automatically revoked. See ECF No. 94. Lisle subsequently informed the Court that she did not wish to introduce any evidence on the issue.

## II. LEGAL ANALYSIS

Lisle argues that because neither her counsel, the Government, nor the Court advised her prior to her guilty plea about § 1451(e)'s requirement that her citizenship be automatically and immediately revoked as part of her conviction, her guilty plea will be rendered constitutionally infirm if the Government's Motion to Revoke is granted. ECF No. 89 at 2-3. Thus, Lisle conversely contends, the Government's Motion to Revoke should be denied so that her plea will remain knowing and

---

movant must promptly notify the circuit clerk if the district court states either that it would grant the motion or that the motion raises a substantial issue.

**(b) Remand After an Indicative Ruling.** If the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal. If the court of appeals remands but retains jurisdiction, the parties must promptly notify the circuit clerk when the district court has decided the motion on remand.

Fed. R. App. P. 12.1.

[3] Because the parties have not attempted to develop a record as to the negotiations of the plea agreement, my analysis is limited to the entry of the guilty plea itself.

intelligent, and, therefore, constitutionally sound. *Id.* Lisle rests her argument on (A) the Sixth Amendment right to effective assistance of counsel, and (B) the Fifth Amendment right to due process. For the reasons that follow, I conclude that Lisle's plea was both knowing and intelligent when it was made at the Rule 11 hearing, and, therefore, the Motion to Revoke should be granted.

A. **Sixth Amendment Right to Effective Assistance of Counsel**

Lisle first argues that her plea was not knowing or intelligent because her counsel provided ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Hernandez-Hernandez v. United States*, 904 F.2d 758, 761 (1st Cir. 1990); *see also United States v. Keith*, No. 17-3837, 2019 WL 1223218, at *2 (2d Cir. Mar. 15, 2019) ("Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty."); *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (same). Claims of ineffective assistance of counsel under the Sixth Amendment must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984): a petitioner must establish both (1) that his or her counsel provided deficient assistance, and (2) that he or she suffered prejudice as a result. *Id.* at 687. Prejudice exists when there is "a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Lisle asserts in her memorandum of law that "[i]t appears the defendant's counsel clearly offered ineffective assistance" on the impact of § 1451(e), citing

7

*Padilla v. Kentucky*, 559 U.S. 356 (2010). ECF No. 81 at 10. In *Padilla*, the Supreme Court held that a lawyer's failure to provide correct advice, or a lack of advice altogether, concerning a clear deportation consequence of a guilty plea amounts to constitutionally deficient representation:

> When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

559 U.S. at 369 (internal footnote omitted).

Here, the statute's deportation consequence is "truly clear." *Id.* Section 1451(e) states that after a § 1425 conviction, the court "*shall thereupon* revoke, set aside, and declare void the final order admitting such person to citizenship, and *shall* declare the certificate of naturalization of such person to be canceled." 8 U.S.C.A. § 1451(e) (emphasis added). In *Kayode v. United States,* No. H-08-387, 2012 WL 12867437, at *6 (S.D. Tex. June 5, 2012), *aff'd*, 777 F.3d 719 (5th Cir. 2014), the court observed that § 1451(e) "requires the district court to revoke the final order granting the defendant citizenship," and, therefore, "the deportation consequences of [the] guilty plea were clear." *Id.* Thus, the court found that the defendant had "established his counsel's deficiency as a matter of law." *Id.*

Thus, even without Lisle's counsel's apparent concession of ineffective assistance, I find that his failure to inform Lisle of § 1451(e)'s immediate and automatic immigration consequence—the revocation of the defendant's citizenship—constitutes deficient representation under the first prong of *Strickland*.

However, to obtain collateral relief, Lisle must also satisfy *Strickland's* second prong's requirement of prejudice: that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. I conclude that Lisle has not met her burden to show prejudice.

Lisle does not assert that she would have gone to trial, and not pleaded guilty, had she known in advance about § 1451(e)'s requirement. On the contrary, since this matter was remanded to this court by the First Circuit, Lisle has sought to preserve, not withdraw, her guilty plea, apparently satisfied with the benefit of the bargain—a fully probated sentence—that the plea agreement secured for her. *See* ECF No. 83 at 4; ECF No. 74 at 14-15.

Thus, Lisle was not prejudiced because she does not claim that she would not have pleaded guilty had she been informed that her citizenship would be revoked as part of her sentence pursuant to § 1451(e). Because Lisle has failed to demonstrate prejudice, she has failed to satisfy the second prong of the *Strickland* inquiry. Accordingly, her guilty plea did not violate her Sixth Amendment rights under the *Strickland* test, and her guilty plea was not unknowing or unintelligent on that basis.

**B.    Fifth Amendment Due Process**

Where the Sixth Amendment involves obligations by counsel, the Fifth Amendment imposes a duty on the Court: "A district court's duty to ensure a knowing and voluntary plea arises from the Fifth Amendment's guarantee of due process and thus affords defendants a right distinct from the Sixth Amendment right to effective

assistance of counsel." *United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012).[4] For a defendant's guilty plea to be knowing and intelligent, the court must inform a defendant of the "direct" consequences of his or her plea. *United States v. Ocasio-Cancel*, 727 F.3d 85, 89 (1st Cir. 2013). The colloquy required by Rule 11 helps safeguard the protections of due process by "ensur[ing] that a defendant who pleads guilty does so with full comprehension of the specific attributes of the charge and the possible consequences of the plea." *United States v. Ramos-Mejía*, 721 F.3d 12, 14 (1st Cir. 2013) (quoting *United States v. McDonald*, 121 F.3d 7, 11 (1st Cir. 1997)).

Lisle argues that the Court's failure to inform her of the automatic revocation of her citizenship required by § 1451(e) violated the Fifth Amendment and Rule 11 as a failure to inform her of a direct consequence of her plea. *See* ECF No. 81 at 13-15. The Government contends that any Fifth Amendment violation or Rule 11 error was harmless because Lisle has not shown that she would not have pleaded guilty had she known about § 1451(e)'s requirement and, moreover, she still does not wish to withdraw her guilty plea now. *See* ECF No. 90 at 4-5.

Because Lisle failed to object at the Rule 11 hearing or to move to set aside her plea in the district court, I review the alleged Rule 11 violation for plain error. *See*

---

[4] "A defendant's guilty plea must be voluntary, knowing, and intelligent." *United States v. Tanco-Pizarro*, 873 F.3d 61, 64 (1st Cir. 2017). There is no suggestion that Lisle's plea was involuntary. *See* Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."). Rather, at issue here is Lisle's notice of the consequences of her plea, which implicates whether her plea was knowing and intelligent. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *United States v. Delgado-Hernandez*, 420 F.3d 16, 19 (1st Cir. 2005) ("[A] plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.") (internal quotation marks omitted).

*United States v. Santiago*, 775 F.3d 104, 106 (1st Cir. 2014).[5] "To satisfy plain error review, the defendant must show 1) there was an error, 2) the error was plain, 3) the error affected substantial rights, and 4) the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original).

**1. Rule 11 Error**

The extent to which, post *Padilla*, an immigration consequence of a guilty plea constitutes a direct rather than a collateral consequence of the resulting conviction in the context of the Fifth Amendment's due process requirement, such that the failure to inform of that consequence would be plain error, is an unsettled area of the law. *See Padilla*, 559 U.S. at 364 n.8 ("The disagreement over how to apply the direct/collateral distinction has no bearing on the disposition of this case[.]"); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1241 (9th Cir. 2011) ("While *Padilla's* holding is directly applicable to our Sixth Amendment analysis . . . it sheds no light on the obligations a district court may have under Rule 11 and due process."); *United States v. Youngs*, 687 F.3d 56, 62 (2d Cir. 2012) ("[T]he *Padilla* Court's unwillingness to apply the direct/collateral distinction in the Sixth Amendment context does not demonstrate the Court's intention to do away with that distinction entirely in the Fifth Amendment context.").

At least one court of appeals has held that a "failure by the district court to inform a defendant of potential immigration consequences does not entitle the

---

[5] Lisle contends that plain error review is inappropriate because it is reserved for forfeited errors. *See* ECF No. 89 at 8-9. Because, Lisle argues, it is the Government that is the moving party at this juncture, and because Lisle's position is that there was no Rule 11 error unless the motion for revocation is granted, she contends that there has been no forfeiture and plain error review is therefore inapposite. *Id.* Nonetheless, because Lisle did not object at her Rule 11 hearing and has not sought to set aside her plea, I find that plain error review is the appropriate standard.

defendant to a vacation of his conviction because the district court—as opposed to defense counsel—is not under a constitutional obligation to inform the defendant of these potential consequences." *United States v. Ataya*, 884 F.3d 318, 323 n.3 (6th Cir. 2018). The First Circuit, meanwhile, has left open the possibility that "counsel's misadvice about the deportation consequences of a plea may [also] implicate Fifth Amendment concerns about the voluntariness of a defendant's guilty plea[,]" but has not articulated an obligation by district courts under the Fifth Amendment to inform defendants of deportation consequences. *See United States v. Castro-Taveras*, 841 F.3d 34, 51 & n.14 (1st Cir. 2016) (applying Sixth Amendment ineffective assistance of counsel analysis rather than Fifth Amendment due process analysis to claim of misadvice about deportation consequences).

I need not parse *Padilla's* effect on the court's duty to inform defendants of collateral immigration consequences, however, because a revocation of naturalization, required by § 1451(e), represents a direct and not a collateral consequence of Lisle's conviction, irrespective of its connection to immigration. A § 1451(e) revocation is a mandatory requirement over which the district court has no discretion. S*ee Okpala v. Whitaker*, 908 F.3d 965, 970 (5th Cir. 2018) ("The language of [§ 1451(e)] is mandatory; the trial court cannot exercise discretion on the cancellation process."); *United States v. Maduno*, 40 F.3d 1212, 1217 (11th Cir. 1994) (holding that the revocation of citizenship pursuant to § 1451(e) "is a simple ministerial task and is statutorily required"); *United States v. Inocencio*, 328 F.3d 1207, 1210 (9th Cir. 2003) ("[T]he purpose of 8 U.S.C. § 1451(e) is to ensure the *automatic* revocation of naturalization upon a conviction under … § 1425.").

12

Moreover, it is the court itself that orders the revocation as part of its sentence. 8 U.S.C.A. §1451(e) ("[T]*he court in which such conviction is had* shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship[.]") (emphasis added). Thus, § 1451(e)'s revocation of citizenship is a direct consequence of the conviction, even under this Circuit's pre-*Padilla* law which categorized immigration consequences as collateral.[6]

Furthermore, the loss of one's citizenship is the loss of a most fundamental right, no less serious than the loss of one's liberty that occurs with imprisonment. American citizenship provides "priceless benefits" and losing it can be "more serious than a taking of one's property, or the imposition of a fine or other penalty. . . . It would be difficult to exaggerate its value and importance." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). Thus, the mandatory revocation of citizenship pursuant to § 1451(e) is a consequential aspect of the punishment authorized for

---

[6] In *United States v. Gonzalez*, the First Circuit explained:

> What renders the plea's immigration effects "collateral" is not that they arise "virtually by operation of law," but the fact that deportation is "not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he has no responsibility." However "automatically" [the] deportation-or administrative detention-might follow from [a] conviction, it remains beyond the control and responsibility of the district court in which that conviction was entered and it thus remains a collateral consequence thereof.

202 F.3d 20, 27 (1st Cir. 2000) (internal citations omitted), abrogated on other grounds by *Padilla*, 559 U.S. 356; *see also United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir. 2000) ("[W]here the consequence is contingent upon action taken by an individual or individuals other than the sentencing court–such as another governmental agency or the defendant himself–the consequence is generally 'collateral.'").

The Ninth Circuit's decision in *Littlejohn* is instructive as to why the consequences of § 1451(e) are not collateral. There, the district court did not inform the defendant before he pleaded guilty about the effect of 21 U.S.C.A. § 862a, a statute which strips those convicted of felonies involving controlled substances of public benefits eligibility. *Littlejohn*, 224 F.3d at 966; 21 U.S.C.A. § 862a (West 2019). The Ninth Circuit held that § 862a constituted a direct consequence because, like § 1451(e), its application was automatic upon conviction for certain crimes and was not dependent upon the future actions of independent agencies. *Littlejohn*, 224 F.3d at 967. The district court's failure to warn the defendant of the statute's effect was therefore error. *Id*. at 969.

those found guilty of unlawfully procuring naturalization. It is, without question, an important part of the sentence imposed by the court.

Before accepting a guilty plea, Rule 11 directs that "the court must inform the defendant of, and determine that the defendant understands, . . . any mandatory minimum penalty[.]" Fed. R. Crim P. 11(b)(1)(I). Here, Lisle was not directly informed by the Court that her plea would, at a minimum, result in the mandatory revocation of her citizenship pursuant to § 1451(e). Thus, the plea colloquy that preceded her plea failed to ensure that she entered her guilty plea "with full understanding of the nature of the charge and the consequences of [her] plea" in violation of Rule 11. *United States v. Lopez-Pineda*, 55 F.3d 693, 695 (1st Cir. 1995) (internal quotation marks omitted). This was plain error, which satisfies the first two prongs of plain error review. I therefore turn to consider the third prong: whether the error affected Lisle's substantial rights.

### 2. Lisle's Substantial Rights

Although it was plain error for Lisle not to be informed of the automatic effect of § 1451(e), "[n]ot every violation of Rule 11 invalidates a guilty plea, and the Criminal Rules specifically instruct courts to disregard any defect in a Rule 11 proceeding that does not affect the defendant's substantial rights." *McDonald*, 121 F.3d at 11; *see also* Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights.").

To satisfy the third prong of plain error review and show that her substantial rights were affected, Lisle "must show a reasonable probability that, but for the error, [she] would not have entered the plea." *Santiago*, 775 F.3d at 107. To make this

determination, courts review the totality of the circumstances surrounding the Rule 11 hearing and review the entire record. *Id.*; *see also United States v. Santo*, 225 F.3d 92, 99 (1st Cir. 2000). "[E]ven an error implicating Rule 11's core concerns will not require vacating a guilty plea if the error, in context, is harmless." *McDonald*, 121 F.3d at 11. For several reasons, the totality of the circumstances of Lisle's guilty plea establish that the Rule 11 proceeding, although imperfect, informed her that the revocation of her citizenship was a possible consequence of her conviction.

Paragraph 7 of Lisle's plea agreement alerted her to the possibility of her deportation: "The parties agree and understand that the offense(s) to which Defendant is pleading guilty may result in Defendant being removed from the United States." ECF No.33 ¶ 7. Because loss of citizenship is a necessary antecedent to deportation, *see Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 286 (1966) ("The immediate hardship of deportation is often greater than that inflicted by denaturalization, which does not, immediately at least, result in expulsion from our shores."), Lisle was on notice of the possibility that her citizenship would be revoked. This notice was reinforced by the colloquy during Lisle's Rule 11 hearing which addressed Paragraph 7 of the plea agreement. Lisle verbally confirmed that she "want[ed] to plead guilty regardless of any immigration consequences that [her] plea may entail even if the consequences are [her] automatic removal from the United States." *See* ECF No. 72 at 26. Subsequently, at her sentencing, Lisle reaffirmed that she understood that her "conviction could and perhaps likely will lead to deportation." ECF No. 74 at 11. Accordingly, even though Lisle was not specifically informed during the Rule 11 colloquy that revocation of her citizenship would be a

mandatory consequence of a conviction, the totality of the circumstances demonstrate that Lisle knew that as a naturalized United States citizen, she faced serious adverse immigration consequences, which could include the revocation of her naturalization.

Moreover, and as previously explained, Lisle has continuously sought to preserve her guilty plea, even in the face of the Government's stated willingness to permit Lisle to withdraw it. Thus, Lisle has not shown a reasonable probability that if she had been directly informed at her Rule 11 hearing that her citizenship would be revoked, she would not have pleaded guilty. Accordingly, I conclude Lisle's substantial rights were not affected by the Rule 11 error and her guilty plea was both knowing and intelligent. Because Lisle cannot satisfy the third prong of plain error review, it follows that the fourth and final prong—whether the error seriously affected the fairness, integrity, or public reputation of the judicial proceeding—is also not satisfied.

## III. CONCLUSION

The Government's Motion to Revoke Lisle's citizenship (ECF No. 61) under 8 U.S.C.A. § 1451(e) is **GRANTED** and the Government's proposed revocation order will be entered. Because this case has been appealed and the issues addressed by this Order will be examined by the First Circuit on appeal, it is further **ORDERED** that the revocation order is **STAYED**. Either party may move for the stay to be terminated upon the docketing of a final mandate from the First Circuit Court of Appeals.

**SO ORDERED.**

**Dated this 27th day of June, 2019.**

                                                        **/s/ JON D. LEVY**
                                             **CHIEF U.S. DISTRICT JUDGE**